## WILLIAM MARSHALL v. ALBERT TOWN.

*Sale of property upon mesne process. Attachment. Possession.*

Property attached may be sold upon mesne process, in pursuance of the statute, (Comp. Stat. ch. 31 § 31) before the service of the writ is completed, by the delivery of a copy of it to the defendant.

A sale upon mesne process, of a part only of the property attached, but for an amount exceeding the plaintiff's claim, and exceeding the amount to which the officer is commanded to attach, will not dissolve the attachment as to the remainder, or impair the creditor's lien upon it.

Property sold, which is in the possession of a third person, is subject to attachment as the property of the vendor, until the vendee gives notice of his ownership.

If property is attached and removed to the building of a third person by his permission, but with an understanding that he is to assume no responsibility as to its custody or safe keeping, the attaching officer is to be regarded as the person having the possession of the property, and any notice, in reference to a change in the ownership of it, should be given to him, and not to the owner of the building.

TROVER for a quantity of corn which the plaintiff's testimony tended to show was sold to him by William P. Briggs, on the 7th of December, 1852, at which time the plaintiff took a lease of the said Briggs' real estate in Richmond. The written lease which was executed by them, contained a transfer of the corn in question, and of some other personal property, for all which, the plaintiff's testimony tended to show, he was to pay 500 dollars to one Thomas Reed, to whom Briggs was indebted. The corn had been attached with other property on the 7th day of the preceeding October, upon a writ in favor of A. B. Maynard against said Briggs; and afterwards on the 11th of October and the 1st of November upon writs against Briggs, in favor of Wires & Peck, and of Whipple & Jones. These attachments were made by leaving copies at the town clerk's office; but about the 30th of October, 1852, the attaching officer removed the corn from the premises of Briggs to the corn-barn of the defendant, by his permission; but the defendant, when giving the permission, told the officer he would not assume any responsibility whatever, of its custody, or for its safe keeping, to which the officer replied that he required none. The attachments in favor of Wires & Peck, and of Whipple & Jones, were released on the 8th of December, 1852, and on the 9th of December, 1852, the corn sued for,

was attatched by the same officer upon a writ in favor of J. & J. H. Peck & Co., against Briggs ; and it was admitted that said writ had been duly returned to, and was pending in Chittenden county court, and that the said Pecks & Co. were creditors of Briggs. It appeared from the files and records in the suit *Maynard* v. *Briggs*, that the attaching officer on the 13th of December, 1852, sold upon the writ, upon the previous application of the plaintiff, and in pursuance of the statute, a part of the property attached in that suit, not including this corn, for the sum of $ 341,48, exclusive of the expense of the sale ; and that this amount exceeded Maynard's claim, and the amount to which the officer was commanded to attach in his writ ; and that a judgment was regularly obtained, and an execution issued, in favor of Maynard, on the 17th of May, 1853, which was the first day upon which he was entitled to it.  It also appeared that the service of the writ upon Briggs was not completed by delivering a copy of it to him until the 7th of February, after the sale ; but this was more than twelve days before the session of the court at which it was made returnable.  It was claimed by the plaintiff that, for this reason, the sale of the property was void, and the officer a trespasser ; also that the sale of property attached to an amount equal to that which the officer was commanded in the writ to attach, operated as a discharge or dissolution of the attachment, as to the remaining property not sold ; but the court instructed the jury, that if the proceedings were in other respects regular, the sale would not be invalid on account of the copy of the writ not having been given to the defendant Briggs at the time of the sale ; and that the sale of a part of the property would not have the effect of releasing the remainder, but that the officer would still have the right of holding it until a final judgment was rendered in the suit ; and to these instructions the plaintiff excepted.

Evidence was introduced by the plaintiff, tending to prove that on the 8th of December, 1852, he notified the defendant that he had purchased the corn ; but this was denied by the defendant, whose testimony tended to prove that no notice was given to him until some weeks after the attachment of the Pecks.  The court charged the jury, that it was necessary for the plaintiff to have given notice to the defendant, that he had become the owner of the

corn; and that if no notice was given until after it was attached on the writ of the Pecks, that attachment would hold against the plaintiff's title; and to this charge the plaintiff also excepted.

Evidence was given tending to prove that the corn in question was not originally attached on the writ, in favor of Maynard, but no question of law was reserved on this part of the case; and it was claimed on the part of the defendant, that the alledged sale from Briggs to the plaintiff, was fictitious and fraudulent. The jury returned a verdict for the defendant.

*W. P. Briggs* for the plaintiff.

*Peck & Harvey* for the defendant.

The opinion of the court was delivered by

Isham, J.   The plaintiff claims title to the corn, for which this action is brought, under a contract of sale contained in a lease of certain premises to himself given by Mr. Briggs on the 7th of December, 1852, for which, the plaintiff was to pay Mr. Reed, to whom Mr. Briggs was then indebted, the sum of five hundred dollars.   It appears from the case, that at the time of that sale, this corn, with other personal property, had been attached as the property of Mr. Briggs at the suit of Mr. Maynard, of Messrs. Wires & Peck, and of Whipple & Jones, and that those attachments were then subsisting liens on the property.   Mr. Briggs, therefore, at the time of that sale, had a general property in this corn, which passed to the plaintiff under that sale; but a special property existed in the officer by whom the attachment was made, with the right also of its exclusive possession.   So long as that right of the officer exists, it is obvious that the plaintiff cannot sustain this action.   The suits of Messrs. Wires & Peck, and Whipple & Jones, were settled on the 8th of December, 1852, leaving only the attachment of Mr. Maynard as a lien on the property.   The attachment in that case was made on the 7th of October, 1852, and a copy of that attachment was duly left in the town clerk's office.   A judgment was recovered, and an execution issued on the 17th of May, 1853, which was the first day that it could lawfully issue.   It is insisted that the lien created by that

attachment was dissolved; and that the officer had no right, on the strength of it, to retain the property from the possession of the plaintiff. From the records in that case it appears that, on an application duly made for that purpose under the statute, the officer sold on the writ personal property, other than the corn in question, to the amount of $ 341,48, being more than the amount of the plaintiff's claim, and more than the amount for which he was commanded to attach; and that this sale was made before a copy of the writ was delivered to Mr. Briggs. We are satisfied that the neglect of the officer to deliver to Mr. Briggs a copy of the writ, will not affect the legality of that sale. The requirement of the statute in that respect is complied with if the copy is left twelve days before the session of the court to which the writ is returnable. The object of that provision is to notify the defendant of the pendency of the suit, the cause of action upon which the plaintiff has declared, and the term of the court in which his appearance is to be entered. The Comp. Stat. 245, providing for the sale of personal property on *mesne process*, is a distinct and independent provision. Except in the particulars above mentioned, it was not pretended, at the argument of the case, that there was any irregularity in that sale. We are not called upon to express an opinion upon the question, whether the officer was, in all respects, justified in making a sale of that property to that amount, as, in any event, we think, it will not have the effect to dissolve the attachment upon any of the property which was included in the officers return. The sale changed the form of the security, but preserved the lien. If, in that proceeding, the officer abused the process in his hands, its effect will be, not to destroy the lien of the creditor, but to subject the officer to a liability in an action on the case for such damages as the party injured has actually sustained. In the case of *Pierson* v. *Gale*, 8 Vt. 512, the court remarked, that "it is well "settled, that whenever the process is regular, and issues from a "court of competent jurisdiction, neither the officer or party are "liable in trespass, for any mere abuse of the process, however "groundless or malicious their proceedings may be; but the appro-"priate remedy is case." The doctrine of that case is fully sustained by both English and American authorities. *Luddington* v. *Peck*, 2 Conn. 700. *Watson* v. *Watson*, 9 Conn. 148. *Brown* v.

*Foster*, 7 Wend. 301. *Belk* v. *Broadbent* 3 Term. 185. Chitty on Plea. 187, 136.

But if that sale was illegal, and if the attachment was dissolved by it, the difficulty in sustaining this action is not removed. The attachment of Pecks & Co., was placed on this corn, as the property of Mr. Briggs, on the 9th day of December, 1852, the second day after the sale by Mr. Briggs to the plaintiff, and long before the sale of the personal property on mesne process. That suit, it appears, is still pending in Chittenden county; and also that they are in fact the creditors of Mr. Briggs. If a lien on that property has been created by that attachment, and if that property was then subject to be taken as the property of Mr. Briggs, it is obvious, that this action cannot be sustained, for the officer has still a special property in the corn, and a subsisting right to its exclusive possession. The sale of the property, by Mr. Briggs, passed a valid title to the plaintiff as against himself, but not as to his creditors. If the property had remained in the possession of Mr. Briggs, a visible and substantial change of its possession would have been necessary to protect it from being attached as his property; but as the property was in the hands of a third person, notice of the sale, and of his right to the property, was necessary to have been given by the plaintiff to the officer having its custody and possession. Such notice would be equivalent to a change of possession. *Barney* v. *Brown*, 2 Vt. 374. *Potter* v. *Washburn*, 13 Vt. 558. On this subject the court charged the jury, that it was necessary for the plaintiff to give notice to the defendant that he had become the owner of the property, and that if no notice was given until after the attachment of Pecks & Co., that attachment would hold the property as against the plaintiff. The jury returned a verdict for the defendant, thus in effect finding that no such notice was given before that attachment was made. There was no other issue involved in the case, upon which that verdict could have been rendered, but the fact, that the sale from Mr. Briggs to the plaintiff was fraudulent in fact; and that, with greater certainty, would subject the property to be taken as the property of Mr. Briggs. There has been no point of time, therefore, from the day when this property was first attached, on the 7th of October, 1852, to the present time, in which the officer has not had not only the right of property but the right of possession to this corn as against the plaintiff.

But if notice had been given to the defendant, we think, the difficulties are not removed so as to enable the plaintiff to sustain this action. It is distinctly stated in the case, that about the 30th of November, 1852, the officer who made the attachment, removed the corn from the premises of Mr. Briggs, and placed it in the corn-barn of the defendant. On that occasion the defendant informed the officer that he would not assume any responsibility whatever of *its custody*, or for *its safe keeping*; and that the officer then informed him that he asked for no such assurances. Under those circumstances, it cannot be said that the defendant stood as the bailee of the officer, or even as his servant. It may be said with greater propriety, that the officer still had the custody of this property; and for that purpose also, by the license and permission of the owner, the possession of the building in which it was placed. The notice of the sale of this property, for the purpose of effecting a change of its possession, and placing it in a situation in which it could not be taken as the property of Mr. Briggs, should have been given, not to the defendant, but to the officer having its custody and possession. For the want of such notice, there was no change of its possession, either actual or constructive, and the property remained subject to be attached as the property of Mr. Briggs. In every point of view, therefore, in which we have been able to look at this case, we are unable to see any ground, on which this action can be sustained.

The judgment of the county court must be affirmed.